IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIO MARTINEZ CAMPUZANO, | § § § | |
| *Petitioner*, | § § | No. 1:25-CV-1715-DAE |
| v. | § § | |
| NOEM, *et al*., | § § | |
| *Respondents*. | § § | |

ORDER

Before the Court is Petitioner Mario Martinez Campuzano's

("Petitioner") Petition for Writ of Habeas Corpus, (Dkt. # 1), filed pursuant to 28

U.S.C. § 2241, and Motion for Preliminary Injunction (the "Motion"), (Dkt. # 2).

Respondents filed a Response to the Motion on December 29, 2025.  (Dkt. # 15.)[1]

Petitioner's Motion was originally set for a hearing on January 6,

2026.  However, given that the parties' arguments set forth in Petitioner's Petition

for Writ of Habeas Corpus, (Dkt. # 1), Petitioner's Motion for Preliminary

Injunction, (Dkt. # 2), and Respondents' Response, (Dkt. # 15), appeared to fully

address Petitioner's statutory challenge to his ongoing detention—whether 8

---

[1] The Court will only address Respondents' Amended Response, (Dkt. # 15), which
was filed after their initial Response to Petitioner's Motion for Preliminary
Injunction, (Dkt. # 14).

1

U.S.C. § 1225(b)(2) or § 1226(a) applies in his case—the Court ordered the parties to advise whether they were willing to rest on their arguments set forth in Petitioner's Petition for Writ of Habeas Corpus, (Dkt. # 1), Petitioner's Motion for Preliminary Injunction, (Dkt. # 2), and Respondents' Response, (Dkt. # 15), on this statutory interpretation issue. Upon conferring, the parties submitted they were indeed willing to rest on their arguments and requested that the Court rule on the arguments set forth in the filed documents. (Dkt. # 17.) They advised that the matter was fully briefed and ready for adjudication. (Id. at 2.)

Accordingly, the Court finds this matter suitable for disposition without a hearing and determines that the petition is ready for ruling. After careful consideration of the parties' briefs and the relevant law, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (Dkt. # 1) for the reasons that follow.

## BACKGROUND

Petitioner Martinez Campuzano is a Mexican national who entered the United States in January 1997.[2] (Dkt. # 1 at 3.) Since 1997, Petitioner has not left

---

[2] Petitioner originally entered the United States without inspection ("EWI") prior to 1997 when he was 14 years old. (Dkt. # 1 at 3.) Petitioner states that after the Immigration Reform and Control Act ("IRCA") was signed into law in 1986, his father took him to apply for his permanent residency. (Id.) Petitioner further states that he believes he applied for permanent residency and obtained an employment authorization card, a social security number, and a driver's license, but he does not know whether he is indeed a lawful permanent resident. (Id. at 3–4.) Petitioner

the United States and has resided continuously in the country for over 28 years. (Id. at 4.)  He has significant family and community ties to the United States, including two U.S. citizen children.  (Dkt. # 2 at 2.)  Petitioner states that he has applied for 42-B relief[3] and qualifies for a T-visa.

In July of 2025, Petitioner was arrested in Bastrop, Texas for driving without a license and was subsequently detained by Immigration and Customs Enforcement ("ICE").  (Dkt. # 1 at 4.)  He is currently being held at T. Don Hutto Detention Center in Taylor, Texas pending removal proceedings.  (Dkt. # 15 at 3.) Respondents assert that Petitioner is being detained under the "mandatory detention" authority for noncitizens who are in the process of entering the United States, 8 U.S.C. § 1225. (Dkt. # 15 at 3–4, 5–6; see Dkt. # 15-2); see also Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025)).  As such, Petitioner is being held without the possibility of release or a bond hearing.  (See Dkts. ## 11 at 2; 15-2 at 1.)

On October 24, 2025, Petitioner initiated this habeas action.  (Dkt. # 1.)  That same day, Petitioner filed Motion for Preliminary Injunction to enjoin Respondents from continuing Petitioner's detention without a bond hearing

---

avers that he then left the United States for Mexico for an unspecified amount of time before returning in 1997 for seasonal agricultural work.  (Id.)  There is no record of his admission to the United States for this 1997 entry.  (Id. at 4, 13.)
[3] The Court presumes Petitioner refers to a request for cancellation of removal under 8 U.S.C. § 1229b using form EOIR-42B.

pending the resolution of his habeas petition.  (Dkt. # 2.)[4]  Petitioner brings claims

that his ongoing detention without bond is unlawful in violation of the Immigration

and Nationality Act ("INA"), his Fifth Amendment Due Process rights, the

Administrative Procedure Act ("APA"), the Suspension Clause, and various bond

regulations.  (Dkt. # 1 at 13–16.)

LEGAL STANDARD

"A district court may grant a writ of habeas corpus if a petitioner is in

federal custody in violation of the Constitution or federal law."  Buenrostro-

Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7,

2025) (internal citation and quotations omitted); 28 U.S.C. § 2241.  The habeas

---

[4] The Court originally set Petitioner's Motion for a hearing on November 20, 2025.
(Dkt. # 8.)  However, on November 7, 2025, the immigration court made an oral
finding that Petitioner had been lawfully admitted and gave the Department of
Homeland Security ("DHS") time to amend the notice to appear to reflect the new
charges.  (Dkt. # 7 at 1.)  Because the immigration judge's finding would make
Petitioner eligible for a bond hearing and would render the Petition for Writ of
Habeas Corpus moot, the parties requested that the Court hold the motions in
abeyance until after additional immigration court proceedings.  (Id. at 1–2.)  The
Court granted the parties' request and canceled the hearing until further update by
the parties.  (Dkt. # 10.)  On November 21, 2025, the immigration judge rescinded
his decision and found that Petitioner was not lawfully admitted into the country.
(Dkt. # 11 at 2.)  The immigration judge further found that the ruling in Matter of
Yajure Hurtado remained in effect and so the immigration court did not have
jurisdiction over Petitioner's bond proceedings.  (Id.)  Petitioner then moved this
Court for a new hearing on his previously filed Motion for Preliminary Injunction,
(Id.), which the Court granted.  On December 5, 2025, an immigration judge issued
an order denying Petitioner's request for a custody redetermination, again noting
that immigration judges lack authority to hear bond requests pursuant to 8 U.S.C.
§ 1225(b)(2)(A) and Matter of Yajure Hurtado.  (Dkts. ## 15 at 3; 15-2 at 1.)

4

petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." <u>Villanueva v. Tate</u>, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" <u>Id.</u> (quoting 28 U.S.C. § 2243).

DISCUSSION

I.     <u>Subject Matter Jurisdiction</u>

As an initial matter, Respondents argue that the Court lacks jurisdiction to decide this case because 8 U.S.C. §§ 1252(g), (b)(9), and § 1225(b)(4) bar district court review of ICE's decision to detain Petitioner, the decision to commence removal proceedings, and any decision regarding the admission of a noncitizen.  (Dkt. # 15 at 8–9.)  The Court will address each provision in turn.

A.     <u>8 U.S.C. § 1252(g)</u>

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter."  8 U.S.C.

5

§ 1252(g).  The Supreme Court has emphasized that this section "applies only to three discrete actions that the Attorney general may take: her 'decision or action' to '*commence proceedings, adjudicate cases*, or *execute* removal orders."  Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) (emphasis in original) (quoting 8 U.S.C. § 1252(g)).  This language was not intended "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General."  Jennings v. Rodriguez, 583 U.S. 281, 294 (2018).  Instead, the provision is confined to "just those three specific actions themselves."  Id. (citing Reno, 525 U.S. at 482–83).  Therefore, because Petitioner challenges the lawfulness of his continued detention during the pendency of his removal proceedings, § 1252(g) does not apply.[5]  Cardoso v. Reno, 216 F.3d 512, 516–17 (5th Cir. 2000) ("[S]ection 1252(g) does not bar courts from reviewing [a noncitizen] detention order, because such an order, 'while intimately related to efforts to deport, is not itself a decision to "execute removal orders" and thus does not implicate section 1252(g).'"); Santiago v. Noem, No. EP-25-CV-361-KC, 2025

---

[5] Respondents characterize Petitioner's challenge as one directed at "the decision to detain [Petitioner] in the first place."  (Dkt. # 15 at 9.)  They argue that this challenge "arises directly from the decision to commence and/or adjudicate removal proceedings against [Petitioner][,]" which is "exactly the type of challenge Jennings referenced as unreviewable."  (Id.)  The Court finds this argument unpersuasive.  Petitioner is not challenging the decision to detain him but rather his continued detention without bond.  (See Dkt. # 1 at 2.)  Contrary to Respondents' claims, this falls outside the types of challenge § 1252(g) is explicitly limited to. Jennings, 583 U.S. at 294; Cardoso, 216 F.3d at 516–17.

WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); <u>Pineda v. Noem</u>, No. SA-25-CA-

01518-XR, 2025 WL 3471418, at *2 (W.D. Tex. Dec. 2, 2025); <u>YENNIFER</u>

<u>VALERIA DAVILA MERCADO, Petitioner, v. TODD M. LYONS, Acting Dir. of</u>

<u>US ICE, et al., Respondents.</u>, No. 5:25-CV-1623-JKP, 2025 WL 3654268, at *3

(W.D. Tex. Dec. 11, 2025).

   B. <u>8 U.S.C. § 1252(b)(9)</u>

   Next, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  According to Respondents, this provision deprives the

Court of jurisdiction because it consolidates all legal and factual challenges arising

from removal proceedings into a single petition for review of a final removal order

before the appropriate federal court of appeals.  (Dkt. # 15 at 9.)  Section

1252(b)(9), however, does not bar the court's review where a petitioner is not

"asking for review of an order of removal," "challenging the decision to detain

them in the first place or seek removal," or "challenging any part of the process by

which their removability will be determined."  <u>Nielsen v. Preap</u>, 586 U.S. 392, 402

(2019).  Here, Petitioner is not challenging his removal proceedings but rather his

continued detention without bond during the pendency of his removal proceedings. Section 1252(b)(9) thus does not present a jurisdictional bar. Id. at 399–400, 402 (concluding that § 1252(b)(9) did not strip the court of jurisdiction where individuals challenged their detention without bond); Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar" where those bringing suit "are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined.").

    C.    <u>8 U.S.C. § 1225(b)(4)</u>

        Finally, Respondents cite 8 U.S.C. § 1225(b)(4) as a potential bar. Section 1225(b)(4) relates to an immigration officer's ability to challenge another immigration officer's favorable determination of admissibility.[6] The Court sees no relevance of this provision to cases like Petitioner's, nor does the Court find this provision precludes it from exercising jurisdiction. Rojas v. Noem, No. EP-25-CV-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025); Estupinan Reyes v.

---

[6] Specifically, § 1225(b)(4) provides: "The decision of the examining immigration officer, if favorable to the admission of any [noncitizen], shall be subject to challenge by any other immigration officer and such challenge shall operate to take the [noncitizen] whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title."

<u>Warden Bobby Thompson, et al.</u>, No. SA-25-CA-01590-XR, 2025 WL 3654265, at
*2 n.1 (W.D. Tex. Dec. 12, 2025).[7]

Accordingly, Respondents' jurisdictional challenges fail, and the Court has
jurisdiction to consider Petitioner's claims. <u>Estupinan Reyes</u>, 2025 WL 3654265,
at *1 ("As a general matter, the Court has jurisdiction over Petitioner's habeas
petition pursuant to 28 U.S.C. Sections 1331 and 2241."); <u>see also</u> <u>Jennings</u>, 583
U.S. at 293 ("We are required in this case to decide 'questions of law,' specifically,
whether . . . certain statutory provisions require detention without a bond
hearing.").

II.    <u>The Merits of the Petition for Writ of Habeas Corpus</u>

Having concluded that it has jurisdiction over Petitioner's claims, the
Court turns to the merits of Petitioner's habeas petition.  In his Petition, Petitioner
claims that Respondents lack statutory authority to detain him without a bond
hearing and are violating his constitutional rights by doing so.  (<u>See</u> Dkt. # 1.)
Because the Court agrees with Petitioner's statutory argument, it does not reach his
constitutional, APA, or other claims.

_____

[7] To the extent that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), a
provision that discusses the scope and standard of review for orders of removal, the
Court finds nothing in that provision that bars its jurisdiction here.  <u>Cardona-
Lozano v. Noem</u>, No. 1:25-CV-1784-RP, 2025 WL 3218244, *2 (W.D. Tex. Nov.
14, 2025) (concluding that "[b]ecause Petitioner does not assert a challenge to an
order of removal, nothing in [§ 1252(b)(4)] bars Petitioner from seeking relief from
his continued detention in this case").

Petitioner's statutory challenge to his ongoing detention turns on whether 8 U.S.C. §§ 1225(b)(2) or 1226(a) applies in his case.  Section 1225(b)(2), often referred to as the "mandatory detention statute," provides that a noncitizen "who is an applicant for admission" "shall be detained for a removal proceeding" "if the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  "Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion."  Cardona-Lozano, 2025 WL 3218244, *3 (citing Jennings, 583 U.S. at 288).  On the other hand, § 1226(a), the "discretionary detention statute," allows for release on bond and provides 'procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination."  Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346, at *2 (S.D. Tex. Oct. 7, 2025) (quoting Chiliquinga Yumbillo v. Stamper, No. 2:25-cv-479, 2025 WL 2783642, at *2 (D. Me. Sep. 30, 2025)).  Section 1226(a) applies to noncitizens arrested and detained "[o]n a warrant issued by the Attorney General[.]"  8 U.S.C. § 1226(a).

"The Department of Homeland Security's 'longstanding interpretation' had been that § 1226, not § 1225, applies to noncitizens like

[Petitioner] who are already present in the country." Buenrostro-Mendez, 2025 WL 2886346, at *2 (quoting Savane v. Francis, No. 1:25-CV-6666-GHW, 2025 WL 2774452, at *5 (S.D.N.Y. Sept. 28, 2025)).  However, in July 2025, DHS changed its position.  Id.  In a memo sent to all ICE employees, DHS announced that noncitizens already present in the country who had not been admitted were to be "treated in the same manner that 'arriving [noncitizens]' have historically been treated," that is, subject to mandatory detention under § 1225(b)(2).  Maldonado Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025); Cardona-Lozano, 2025 WL 3218244, *6.  The Board of Immigration Appeals ("BIA") adopted this new interpretation in a decision issued on September 5, 2025.  Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). Specifically, the BIA held that the immigration judge "did not have authority over the bond request because [noncitizens] who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings."  Id. at 220.  As a result of these changes, "[t]he government now applies § 1225 to *all* applicants for admission."  Buenrostro-Mendez, 2025 WL 2886346, at *2 (emphasis in original).

Petitioner asserts that Matter of Yajure Hurtado misinterprets the INA. (Dkt. # 1 at 14.)  He argues that, as is demonstrated by the statutory language,

congressional intent, and longstanding agency practice, § 1226 "authorizes the detention of noncitizens in standard removal proceedings before an Immigration Judge," whereas § 1225(b)(2) applies to "recent arrivals seeking admission." (Id. at 6, 8, 14.) Accordingly, because § 1225(b)(2) "does not apply to people like Petitioner, who entered the U.S. without inspection and have resided here for decades," his detention under that provision is unlawful. (Id. at 10, 13–14.) Respondents counter that Petitioner can be properly detained under § 1225(b)(2) because he is an "applicant for admission." (Dkt. # 15 at 3, 5–7.) They argue that § 1225(b)(2) applies to anyone who, like Petitioner, is a noncitizen who was found to be present within the United States without ever having been admitted— regardless of how long such an individual has been present in the country. (Id. at 5–7.) To make this argument, Respondents rely on § 1225(a)(1)'s definition of an "applicant for admission," which defines the term as a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Respondents assert that this language unambiguously covers individuals like Petitioner. (Dkt. # 15 at 5–6.) Therefore, because DHS has determined that Petitioner is "seeking admission" and is not clearly and beyond a doubt entitled to be admitted to the United States, he can be properly detained pursuant to § 1225(b)(2). (Id.)

This case does not present a novel question.  Since July 2025, courts across the country have considered and repeatedly rejected Respondents' broad reading of § 1225(b)(2).  <u>See, e.g.</u>, <u>Mboup v. Field Off. Dir. of New Jersey Immigr. & Customs Enf't</u>, No. 2:25-CV-16882 (MEF), 2025 WL 3062791, at *1 & n.3 (D.N.J. Nov. 3, 2025) (collecting cases); <u>Lopez-Campos v. Raycraft</u>, 797 F. Supp. 3d 771, 784 & n.5 (E.D. Mich. 2025) (same); <u>Vargas Bondi</u>, No. SA-25-CV-1023-FB (HJB), 2025 WL 3300446, at *4  (W.D. Tex. Nov. 12, 2025), <u>report and recommendation adopted sub nom.</u> <u>Vargas v. Bondi</u>, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025) (same); <u>Buenrostro-Mendez</u>, 2025 WL 2886346, at *2, 3 (explaining that "[t]his case is one of a number of recent lawsuits filed challenging the federal government's authority to detain noncitizens during the pendency of removal proceedings under 8 U.S.C. § 1225(b)" and noting that "almost every district court  to consider this issue" has rejected the Government's new interpretation).  This Court reaches the same conclusion for several reasons.

First, Respondent's reading of § 1225(b)(2) conflicts with the plain language of the statute and established rules of statutory interpretation.  By its terms, § 1225(b)(2) applies when three conditions are met: "(1) the person is an 'applicant for admission'; (2) the person is 'seeking admission'; and (3) an 'examining immigration officer determines' the person 'is not clearly and beyond a

doubt entitled to be admitted.'"  Estupinan Reyes, 2025 WL 3654265, at *3.

"Multiple courts have read this 'seeking admission' requirement to mean a

noncitizen present in the United States without admission who *has recently arrived*

*and is actively seeking admission*, not a noncitizen who has been residing in the

country for years."  Cardona-Lozano, 2025 WL 3218244, *4 (emphasis in

original); Rojas Vargas v. Bondi, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at

*3 (W.D. Tex. Nov. 5, 2025).  This Court agrees with that interpretation.  See 8

U.S.C. § 1101(a)(13) (A) (defining "admission" and "admitted" as referring to "the

lawful entry of the [noncitizen] into the United States after inspection and

authorization by an immigration officer"); Martinez v. Mukasey, 519 F.3d 532, 544

(5th Cir. 2008), as amended (June 5, 2008) ("Under th[e] statutory definition,

'admission' is the lawful *entry* of [a noncitizen] after inspection, something quite

different, obviously, from post-entry adjustment of status." (emphasis in original));

Estupinan Reyes, 2025 WL 3654265, at *4 (explaining that petitioner who had

been in the country for decades was not seeking entry, much less lawful entry, and

so could not be considered to be "seeking admission").

　　　　If, on the other hand, § 1225(b)(2) was intended to encompass all

"applicant[s] for admission," irrespective of whether they are recent arrivals, as

Respondents effectively contend, "there would be no need to include the phrase

'seeking admission' in the statute."  Lopez Benitez v. Francis, 795 F. Supp. 3d 475,

488 (S.D.N.Y. 2025).  Such an interpretation therefore renders "seeking admission" meaningless and violates the rule against surplusage.  Id.; Cardona-Lozano, 2025 WL 3218244, *4; Rojas Vargas, 2025 WL 3251728, at *3; Martinez v. Hyde, 792 F. Supp. 3d 211 (D. Mass. 2025) ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text.").

Respondents assert that Petitioner is "seeking admission" because he was issued a Notice to Appear ("NTA").  (Dkt. # 15 at 6.)  They argue that through the issuance of the NTA, DHS determined that Petitioner is a noncitizen "seeking admission."  (Id.)  The Court finds this argument unpersuasive.  A Notice to Appear is issued when an individual is placed in removal proceedings.  8 U.S.C. § 1229(a).  Petitioner's NTA states that he is in removal proceedings because he is a noncitizen "present in the United States who has not been admitted or paroled." (Dkt. # 15-1 at 1.)  Nowhere in Petitioner's NTA is there a determination that he is "seeking admission."  (Id.)  And the Court does not agree with Respondents' contention that simply because Petitioner is not seeking removal from the United States, he must be "seeking admission."  (Dkt. # 15 at 6); see Mukasey, 519 F.3d at 541, 544 (equating seeking "admission" with seeking "entry" and noting that "admission" is "something quite different, obviously, from post-entry adjustment of status").

Moreover, Respondents' interpretation would narrow § 1226 so drastically that it would rarely, if ever, apply. Respondents insist that under their interpretation, § 1226(a) would still apply to noncitizens "within the interior of the United States who were once lawfully admitted but are now subject to removal from the United States under 8 U.S.C. § 1227(a)." (Dkt. # 15 at 7.) For example, it would apply to noncitizens who were initially lawfully admitted but were then placed in removal proceedings after overstaying a visa. (Id.) This argument is unconvincing, though, in part because § 1226(a) is broadly worded. See 8 U.S.C. § 1226(a); Cardona-Lozano, 2025 WL 3218244, *4. Limiting the provision to visa overstays would be inconsistent with both its text and structure, and the Court declines to do so. See id. And, as numerous courts have noted, "there is no indication that Congress intended § 1226 to be limited only to visa overstays. Indeed, there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach." Lopez Benitez, 2025 WL 2371588, at *8. "As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country." Cardona-Lozano, 2025 WL 3218244, *4.

16

This reading is bolstered by the Supreme Court's analysis in <u>Jennings</u>. Although the Supreme Court ultimately answered a different question than the one at bar here, they explained in that case that "U.S. immigration law authorizes the Government to detain certain [noncitizens] *seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." <u>Jennings</u>, 583 U.S. at 289 (emphasis added).  This discussion highlights that people like Petitioner are subject to detention under § 1226(a), not § 1225(b)(2).

Recent decisions in this District have found additional support for this interpretation in legislative history, recent amendments, and longstanding agency practice.  <u>See e.g.</u>, <u>Cardona-Lozano</u>, 2025 WL 3218244, *5–6.  As discussed in those decisions, §§ 1225(b)(2) and 1226 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996.  Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585.  Contrary to Respondents' assertions, "[t]he IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention)." <u>Cardona-Lozano</u>, 2025 WL 3218244, *5 (citing <u>Maldonado Vazquez v. Feeley</u>, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082,

at *4 (D. Nev. Sept. 17, 2025)); <u>see</u> H.R. Rep. No. 104-469, pt. 1, at 229 (1996);

H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.); <u>see also</u> Rodriguez v. Bostock,

No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *23–24 (W.D. Wash. Sept. 30,

2025) (explaining why the IIRIRA's legislative history does not support

Respondents' arguments).

   In addition, earlier this year, § 1226 was amended by the Laken Riley

Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  The Laken Riley Act authorizes

mandatory detention for noncitizens charged with or convicted of certain crimes.

<u>Id.</u>  This Court concurs with the opinion in <u>Cardona-Lozano</u> that "[i]f all

noncitizens charged as inadmissible due to entry without inspection were already

subject to mandatory detention under § 1225(b)(2), it would make no sense for

Congress to have amended the statute to require mandatory detention for specific

subcategories of those individuals."  2025 WL 3218244, *5.  The Court is not

convinced by Respondents' argument that their interpretation does not render the

Laken Riley Act superfluous simply because "redundancies are common in

statutory drafting."  (Dkt. # 15 at 8.)  As the court noted in <u>Cardona-Lozano</u>,

Respondents' interpretation would not make merely a few words meaningless but

rather the entire amendment.  2025 WL 3218244, *5.  The Court declines to adopt

such a reading.

Finally, Respondents' interpretation flies in the face of longstanding agency practice. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform a court's determination of what the law is."). For decades since the passage of IIRIRA, "the agencies charged with interpreting and enforcing the INA applied § 1226(a) to noncitizens like Petitioner, who entered the U.S. without inspection and were apprehended while residing in the U.S." Vasquez, 2025 WL 2676082, at *4; see Cardona-Lozano, 2025 WL 3218244, at *6; Lopez-Arevelo v. Ripa, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); Rodriguez, 2025 WL 2782499, at *24–26. Regulations promulgated after IIRIRA's enactment by the Executive Office for Immigration Review ("EOIR") explained this practice. Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination . . . The effect of this change is that inadmissible [noncitizens], except for arriving [noncitizens], have available to them bond redetermination hearings before an immigration judge, while arriving [noncitizens] do not. This procedure maintains the status quo . . . ").

As described previously, this approach shifted in July 2025, and in September 2025, the new interpretation of § 1225(b)(2) was adopted by the BIA. Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). In Loper Bright, the Supreme Court clarified that the BIA's interpretation of the INA is not entitled to any deference by this Court. 603 U.S. at 412–13. Instead, while an agency's decision "may help inform the Court's inquiry, it does so only to the extent of its 'power to persuade.'" Rodriguez, 2025 WL 2782499, at *25 (quoting Loper Bright, 603 U.S. at 413, 402) (cleaned up). However, when an agency's current position conflicts with its earlier pronouncements, as here, even the agency's "power to persuade" is diminished. Cardona-Lozano, 2025 WL 3218244, at *6; see Rodriguez, 2025 WL 2782499, at *26 (discussing two unpublished decisions from 2023 where the BIA took the opposite position to that taken in Matter of Yajure Hurtado); Cardona-Lozano, 2025 WL 3218244, at *6 (discussing a precedential decision issued one month prior to Matter of Yajure Hurtado applying § 1226 to the detention of a noncitizen who had entered without inspection three years before).

    In recent months, courts across the country have repeatedly rejected the BIA's novel interpretation of the INA. See Buenrostro-Mendez, 2025 WL 2886346, at *3 ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and

§ 1226(a)'s application for the past three decades' support finding that § 1226 applies to these circumstances."); <u>Belsai D.S. v. Bondi</u>, No. 25-CV-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) (calling the decisions a "chorus" of courts rejecting respondents' interpretation of § 1225(b)(2)).  Those courts have time and again found that petitioners who entered without inspection and have long resided in the United States cannot be detained under § 1225(b)(2).  <u>See id.</u>; <u>Cardona-Lozano</u>, 2025 WL 3218244, at *6.  This Court agrees with those well-reasoned opinions.

Here, Petitioner entered without inspection and has been present in the United States continuously for almost thirty years.  For all of the reasons described above and cited by other district courts, he cannot be said to be "seeking admission" into the United States.  Accordingly, his detention without bond under § 1225(b)(2) violates the INA, and he is entitled to relief.[8]

---

[8] "Absent an assertion by Respondents that they are detaining Petitioner under § 1226, the Court has no need to consider whether § 1226 is a valid basis for Petitioner's current detention."  <u>Davila Mercado</u>, 2025 WL 3654268, at *6; <u>see also</u> <u>Estupinan Reyes</u>, 2025 WL 3654265, at *4.  Although Respondents state that Petitioner can be detained discretionarily under either §§ 1226(a) or 1225(b), according to the Immigration Judge's order, Petitioner is currently being held pursuant to § 1225(b)(2) and is being denied a custody redetermination on that basis.  (Dkt. # 15-2 at 1.)  Accordingly, the Court will not consider § 1226 as a basis for Petitioner's detention.  <u>Estupinan Reyes</u>, 2025 WL 3654265, at *4.

III.    Appropriate Relief

Respondents contend that although the only relief available to Petitioner through habeas is release from custody, he "has no claim to any lawful status in the United States that would permit him to reside lawfully in the United States upon release."  (Dkt. # 15 at 2, 4, citing 28 U.S.C. § 2241; DHS v. Thuraissigiam, 591 U.S. 103, 118–19 (2020).)  To the extent that Respondents intend to argue that release is not proper solely because Petitioner lacks lawful status, that argument is without merit.  See Zadvydas v. Davis, 533 U.S. 678, 701, 692–93 (2001) (providing for the release via a habeas corpus proceeding for deportable noncitizens who establish the unreasonableness of their continued detention and noting the protections that exist for noncitizens already in the country even when their presence is unlawful); Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021) (citing Zadvydas); see also Osorio-Martinez v. Att'y Gen. United States of Am., 893 F.3d 153, 175 (3d Cir. 2018) ("Nothing in our precedent suggests that the lack of lawful permanent resident status, potential inadmissibility, or the happenstance that visas are not currently available is dispositive in assessing an [noncitizen's] entitlement to habeas review.").  Under the circumstances of this case, Petitioner's detention is unlawful and habeas relief is proper.  Estupinan Reyes, 2025 WL 3654265, at *4; Davila Mercado, 2025 WL 3654268, at *7; see

Vargas Bondi, 2025 WL 3300446, at *5 (discussing why the appropriate habeas

relief is release rather than a bond redetermination hearing).

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28

U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action

solely as a habeas action under § 2241." Davila Mercado, 2025 WL 3654268, at

*7.  Here, as in Davila Mercado, Petitioner has not specifically brought any non-

habeas claim and has paid only the minimal habeas filing fee.  Accordingly, the

Court denies any request for attorney's fees in this case.  Id.; Aldana Perez v.

Noem, et. al., No. SA-25-CA-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex.

Dec. 5, 2025).

<u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** the Petition for

Habeas Corpus.  (Dkt. # 1.)  Given this ruling, Petitioner's Motion for Preliminary

Injunction is **MOOT**.  (Dkt. # 2.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Mario Martinez
   Campuzano from custody, under conditions of release no more restrictive
   than those in place prior to the detention at issue in this case, to a public
   place by no later than **12:00 p.m. on January 8, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email
   (patricio@garzanarvaez.com) of the exact location and exact time of
   Petitioner's release as soon as practicable and **no less than two hours
   before his release**.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225. If Petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that he be afforded a bond hearing.

5. The parties shall **FILE** individual status reports no later than **6:00 p.m. January 9, 2026**, detailing their compliance with this Order.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, January 6, 2026.

_____
David Alan Ezra
Senior United States District Judge